Filed 2/27/15  In re A.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| Plaintiff and Respondent, | C071573 |
| v. | (Super. Ct. No. JD211508) |
| A.L., | |
| Defendant and Appellant. | |

A.L. appeals from the juvenile court's order denying foster mother Shirley M.'s

Welfare and Institutions Code section 388 petition that sought to vacate the juvenile

court's earlier order terminating dependency jurisdiction over A.L.[1] Construed as a petition for relief under section 388, subdivision (a), or section 388, subdivision (e), the petition was properly denied. A.L. also contends the juvenile court erred in not granting the foster mother's request to vacate the termination order on the grounds the order was entered due to alleged extrinsic fraud or mistake. We conclude there was no evidence of extrinsic fraud or mistake. Therefore, we affirm the juvenile court's order.

BACKGROUND

A.L was born in April 1993. She was adjudged a dependent of the juvenile court in 1998 and, after family maintenance services failed, placed in a foster home in 2000. Parental rights were terminated but A.L. was not adopted. In August 2007, she was placed with Shirley M., who agreed to provide her with a long-term foster home.

A.L. has a learning disability, has low average intellectual skills, and was diagnosed in 2006 with generalized anxiety disorder. She worked with Shirley M. to learn independent living skills and began participating in a transitional independent living plan in March 2010. A.L. received special education assistance but remained behind in school throughout her education and was a sophomore in high school when she reached age 18. With the support of Shirley M., she intended to finish high school and attend college.

On April 16, 2011, A.L. turned 18 years of age. On August 1, 2011, the Sacramento County Department of Health and Human Services (County) filed a request to terminate dependency jurisdiction. The request included the social worker's sworn representations that A.L. was stably placed in a Foster Family Agency home where she had resided for several years; A.L. intended to continue to reside in that home until she

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

could live independently; A.L.'s foster mother agreed to permit A.L. to continue to reside in the home as long as she was in school or pursuing employment; A.L. was scheduled to graduate high school in spring 2012 and intended to attend college thereafter; A.L. had signed a mutual agreement and participates in the Independent Living Program; and A.L. stated she wished to have her dependency terminated. Attached to the request was a completed JV-365 form, initialed and signed by A.L., indicating A.L. had been provided various written information and documentation in connection with her dependency case, including written information providing the date upon which dependency jurisdiction would be terminated, and stating A.L. did not want to attend the termination hearing, despite having been informed of the potential consequences of failing to attend. A.L.'s attorney of record also initialed the request for termination of dependency, indicating she was in agreement with the request. The juvenile court granted the County's request to terminate dependency jurisdiction over A.L.

Although dependency was terminated on August 1, 2011, A.L. continued to receive foster care, supervision, and funding pursuant to section 11403. Prior to her 18th birthday, A.L. was receiving Aid to Families with Dependent Children -- Foster Care (AFDC-FC) funding pursuant to section 11401, subdivision (b)(i), because she had been removed from the physical custody of her parent as a result of a judicial determination that continuance in the home would be contrary to her welfare and adjudged a dependent child of the court as a person described by section 300. As such, she was eligible for continued AFDC-FC funding after her 18th birthday under section 11403, if she signed a mutual agreement, continued her high school education, and was reasonably expected to

3

graduate by her 19th birthday.[2]  A.L. signed the mutual agreement in 2011, prior to
termination of dependency jurisdiction.[3]

On April 9, 2012, a few days before A.L. turned 19 years old, Shirley M. filed a
section 388 petition on a JV-180 form seeking to vacate the termination of A.L.'s
dependency and to reinstate A.L.'s dependency status until May 2013, when A.L. was
then projected to complete high school.  In support of her petition, as changed
circumstances or new evidence, Shirley M. attached an e-mail from the Department of
Social Services (DSS) that explained A.L. was in a paid voluntary placement with Shirley

---

[2]      Effective January 1, 2011, through December 31, 2011, section 11403, subdivision
(a), provided for aid following a foster child's 18th birthday, as follows:  "(a) A child
who is in foster care and receiving aid pursuant to this chapter and who is attending high
school or the equivalent level of vocational or technical training on a full-time basis, or
who is in the process of pursuing a high school equivalency certificate, prior to his or her
18th birthday, may continue to receive aid following his or her 18th birthday so long as
the child continues to reside in foster care placement, remains otherwise eligible for
AFDC-FC payments, and continues to attend high school or the equivalent level of
vocational or technical training on a full-time basis, or continues to pursue a high school
equivalency certificate, and the child may reasonably be expected to complete the
educational or training program or to receive a high school equivalency certificate, before
his or her 19th birthday.  Aid shall be provided to an individual pursuant to this section
provided both the individual and the agency responsible for the foster care placement
have signed a mutual agreement, if the individual is capable of making an informed
agreement, which documents the continued need for out-of-home placement."  (Stats.
2010, ch. 559, § 46.)

[3]      At that time, a mutual agreement was defined in section 11400, subdivision (u), as
"an agreement of consent for placement in a supervised setting between a minor, or, on
and after January 1, 2012, a nonminor dependent, and the agency responsible for the
foster care placement, that documents the nonminor's continued need for supervised out-
of-home placement and the nonminor's and social worker's or probation officer's
agreement to work together to facilitate implementation of the mutually developed
supervised placement agreement and transitional living plan."  (Former § 11400,
subd. (u); Stats. 2010, ch. 559, § 38.)

M. that provided funding until A.L.'s 19th birthday. The e-mail indicated DSS was not recommending reinstatement of dependency under the California Fostering Connections to Success Act (Stats. 2010, ch. 559)[4] but the author provided forms, described as JV-468 and JV-466, for A.L. to file to request reinstatement of dependency. Shirley M. also attached a letter she had written to DSS in response, indicating she had "automatically assumed" A.L. would continue to receive funding until she was 20 years of age since A.L. would not graduate high school before that time, stating she had not heard the term "[v]oluntary placement" before, and stating she had spoken to A.L.'s former attorney, who reportedly stated she would not have "closed the case" had she known of A.L.'s disabilities. Finally, Shirley M. attached an e-mail from an attorney at an organization called The Alliance for Children's Rights that purported to explain A.L.'s eligibility for benefits under the California Fostering Connections to Success Act. The juvenile court set the matter for hearing and appointed A.L. counsel in connection with Shirley M.'s petition.

On June 1, 2012, A.L. filed a section 388 petition on a JV-180 form to reinstate her dependency status by setting aside the prior court order terminating dependency. A.L.'s petition alleged reinstatement was in her best interest because she is delayed, was still in high school, and had no financial support, other than Shirley M., who was under no obligation to continue support. The petition was based on the allegation that

---

[4]     In October 2008, the federal government enacted the Fostering Connections to Success and Increasing Adoptions Act. (Pub.L. No. 110-351 (Oct. 7, 2008) 122 Stat. 3949.) This law revised and expanded federal services and funding for certain foster and adopted children who would normally "age out" of the foster care system. To take advantage of this funding, the Legislature enacted the California Fostering Connections to Success Act., which became operative January 1, 2012. (Stats. 2010, ch. 559, § 1.)

5

dependency should not have been terminated and the juvenile court should have exercised its discretion under section 303 to retain jurisdiction over A.L.

The juvenile court denied A.L.'s petition, stating that "a [section] 388 petition is not proper as [A.L.] is not a dependent." Specifically, the juvenile court explained that a section "388 motion is appropriate when a minor is a dependent to seek to modify her prior order, and [A.L.] is not a dependent of the court, and as such, I don't think a [section] 388 motion is the appropriate -- I don't think it applies and it's not properly filed. [A.L.'s counsel] certainly would be free to file other motions as may be appropriate." Later, the juvenile court further clarified that "a [section] 388 [motion] is to be filed . . . regarding a dependent child or a non-minor dependent, but A.L. is neither of those things at this point in time. So it fails to meet the statutory requirement is the basis of the Court's ruling." [5]

With respect to Shirley M.'s petition, the juvenile court characterized the petition as one seeking to reinstate A.L.'s status as a nonminor dependent. A.L.'s counsel argued A.L. was in the class of individuals the legislature intended to address in the California Fostering Connections to Success Act and should be eligible for reinstatement of dependency status accordingly. The juvenile court continued the hearing to permit the parties to submit further briefing.

The County's opposition argued the juvenile court lacked authority to grant the requested relief under Code of Civil Procedure section 389 because Shirley M. was seeking AFDC-FC funding but had failed to join DSS as a party. The County also argued the juvenile court did not, and could not, retain general jurisdiction over A.L. after

---

[5]    A.L. filed a request for rehearing on June 18, 2012. The request was denied on July 31, 2012.

6

terminating dependency because section 303, subdivision (b), which provides for retaining jurisdiction, was not yet in effect at the time the juvenile court terminated A.L.'s dependency. The County also argued A.L. would not qualify for benefits under the California Fostering Connections to Success Act even if the juvenile court resumed jurisdiction over her, the Legislature did not intend to include persons such as A.L. under the act, and her exclusion did not violate equal protection laws.

A.L. filed a brief in support of Shirley M.'s petition. She argued the California Fostering Connections to Success Act should be applied to her based on legislative intent and the failure to do so would also violate equal protection laws.

On June 29, 2012, the juvenile court denied Shirley M.'s petition. The court explained it could not vacate a final order based on a section 388 petition for modification. The court concluded the only means to reinstate A.L. in foster care based on a section 388 petition was under subdivision (e), and A.L. did not meet the requirements under that subdivision. The court also rejected the argument A.L.'s equal protection rights were being violated by application of the statute to exclude her.

A.L. appeals the juvenile court's June 29, 2012, order denying Shirley M.'s petition.

DISCUSSION

### *Section 388 Petition*

The nature of Shirley M.'s petition, being far from a model of clarity, has caused and continues to cause confusion. As filed, the petition purports to be one seeking a modification of the previous order terminating "foster care," due to changed circumstances or new evidence. Such a petition may generally be brought pursuant to section 388, subdivision (a). However, the cited statute limits relief to a dependent, or a

parent or other person having an interest in a dependent.  Because A.L. was not a dependent when the petition was filed, Shirley M. does not qualify.

Section 388, subdivision (a), provides:  "(1) *Any parent or other person having an interest in a child who is a dependent child of the juvenile court or a nonminor dependent as defined in subdivision (v) of Section 11400, or the child himself or herself or the nonminor dependent* through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court.  The petition shall be verified and, if made by a person other than the child or the nonminor dependent shall state the petitioner's relationship to or interest in the child or the nonminor dependent and shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction."  (Italics added.)  As expressly pointed out by the juvenile court in connection with A.L.'s section 388 petition, A.L. is neither "a dependent child of the juvenile court or a nonminor dependent."  Thus, neither A.L. nor Shirley M. may properly file a section 388 petition under subdivision (a).

The juvenile court appeared to also consider Shirley M.'s section 388 petition as a petition under subdivision (e), seeking resumption of dependency jurisdiction.  Again, as such, the petition was properly denied.

Section 388, subdivision (e), provides:  "(e)(1) On and after January 1, 2012, *a nonminor* who attained 18 years of age while subject to an order for foster care placement and, commencing January 1, 2012, who has not attained 19 years of age, or, commencing January 1, 2013, 20 years of age, or, commencing January 1, 2014, 21 years of age, or as described in Section 10103.5, *for whom the court has dismissed dependency jurisdiction*

8

*pursuant to Section 391*, or delinquency jurisdiction pursuant to Section 607.2, or transition jurisdiction pursuant to Section 452, *but has retained general jurisdiction under subdivision (b) of Section 303, or the county child welfare services, probation department, or tribal placing agency on behalf of the nonminor, may petition the court in the same action in which the child was found to be a dependent or delinquent child of the juvenile court, for a hearing to resume the dependency jurisdiction over a former dependent* or to assume or resume transition jurisdiction over a former delinquent ward pursuant to Section 450.  The petition shall be filed within the period that the nonminor is of the age described in this paragraph.  If the nonminor has completed the voluntary reentry agreement, as described in subdivision (z) of Section 11400, with the placing agency, the agency shall file the petition on behalf of the nonminor within 15 judicial days of the date the agreement was signed unless the nonminor elects to file the petition at an earlier date."  (Italics added.)

Here, subdivision (b) of section 303 did not become operative until January 1, 2012 -- after the court terminated dependency jurisdiction over A.L.  (Stats. 2010, ch. 559, § 8.)[6]  Thus, A.L. does not fall within the class of nonminors who may petition the court to resume jurisdiction pursuant to this section because the juvenile court did not,

---

[6]     Section 303, subdivision (b), provides:  "(b) On and after January 1, 2012, the court shall have within its jurisdiction any nonminor dependent, as defined in subdivision (v) of Section 11400.  The court may terminate its dependency, delinquency, or transition jurisdiction over the nonminor dependent between the time the nonminor reaches the age of majority and 21 years of age.  If the court terminates dependency, delinquency, or transition jurisdiction, the nonminor dependent shall remain under the general jurisdiction of the court in order to allow for a petition under subdivision (e) of Section 388."

because it had no authority to, retain general jurisdiction over her under subdivision (b) of section 303.

Moreover, subdivision (e) expressly sets forth the mechanism for a nonminor, the county child welfare services, probation department, or tribal placing agency on behalf of a nonminor, to petition the juvenile court for resumption of dependency jurisdiction over a former minor dependent. Shirley M. is not one of the individuals or agencies authorized to petition.[7] Thus, her petition, construed as being brought under section 388, subdivision (e), was properly denied.

### *Extrinsic Fraud or Mistake*

In denying Shirley M.'s petition, the juvenile court explained: "The order terminating her jurisdiction became final, okay. I'm not -- I can't undo a final order. There may be a mechanism for that to happen. It is not a [section] 388 petition seeking to reinstate her in foster care, nor is it a motion seeking to modify that order, because in order for me to modify the order that occurred in August, I have to already have jurisdiction. In order for me to allow her to re-enter foster care by a [section] 388

---

[7]     We requested supplemental briefing from the parties on the potential applicability of section 303, subdivision (c), which provides: "(c) On and after January 1, 2012, a nonminor who has not yet attained 21 years of age and who exited foster care at or after the age of majority, may petition the court pursuant to subdivision (e) of Section 388 to resume dependency jurisdiction over himself or herself or to assume transition jurisdiction over himself or herself pursuant to Section 450." Again, however, Shirley M. is not within the class of persons who may petition pursuant to this section. For this same reason, section 10103.5 is equally unavailable to Shirley M. as a means to seek continued funding for A.L. That section provides, in relevant part: "(c) A nonminor who has not continuously received aid . . . , due solely to the fact that he or she attained 19 years of age prior to the effective date of the act that added this section may petition the court for reentry pursuant to subdivision (e) of Section 388."

petition, which is what you filed, she has to come within the new language of AB12,[8] because that extends this general jurisdiction, okay. I can't on the papers in front of me do what you want me to do. I just can't do it . . . there is not any legal authority in front of me to set aside a final order issued by another judicial officer. [¶] So for these reasons the motion is denied."

Despite this explicit ruling, A.L. now contends the juvenile court erred in not granting Shirley M.'s request to vacate the termination order on the grounds the order was entered due to alleged extrinsic fraud or mistake. Yet, neither A.L. nor Shirley M. requested such relief in the juvenile court. The juvenile court cannot be faulted for failing to order relief that was never requested.

After six months, statutory relief from a judgment due to mistake, inadvertence, surprise, or excusable neglect, is no longer available. (Code Civ. Proc. § 473.) Beyond that time, an otherwise valid judgment may only be set aside for extrinsic fraud or mistake. (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068 (*Stevenot*).)

Extrinsic fraud occurs when a party is deprived of the opportunity to present a claim or defense to the court; where a party was kept in ignorance or in some other manner fraudulently prevented from fully participating in the proceeding. (*Stevenot*, *supra*, 154 Cal.App.3d at p. 1068; *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471 (*Kulchar*).) "The vital question is whether the successful party has by inequitable conduct, either direct or insidious in nature, lulled the other party into a state of false security, thus causing the latter to refrain from appearing in court or asserting legal rights." (*Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 314 (*Gibble*),

---

**8**      The juvenile court's reference to "AB 12" is to the California Fostering Connections to Success Act and the subsequent clean-up legislation that became operative January 1, 2012. (Stats. 2010, ch. 559; Stats. 2011, ch. 459.)

citation and internal quotation marks omitted.) Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure to give notice of the action to the other party, convincing the other party not to obtain counsel because the matter will not proceed (and it does proceed). (*Stevenot*, *supra*, 154 Cal.App.3d at p. 1069.) "Fraud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his [or her] case and to protect himself [or herself] from any mistake or fraud of his [or her] adversary, but has unreasonably neglected to do so. [Citation.] Such a claim of fraud goes to the merits of the prior proceeding which the moving party should have guarded against at the time." (*Gibble, supra*, 67 Cal.App.4th at p. 315, citation and internal quotation marks omitted.) "When a party was represented by counsel, absent concealment, any fraud will usually be intrinsic." (*Stevenot*, *supra*, 154 Cal.App.3d at p. 1070.)

Equitable relief for extrinsic mistake is based on the excusable neglect in failing to appear and present one's claim. (*Kulchar*, *supra*, 1 Cal.3d at p. 471.) Examples of extrinsic mistake are "when a party becomes incompetent but no guardian ad litem is appointed . . . ; when one party relies on another to defend . . . ; when there is reliance on an attorney who becomes incapacitated to act . . . ; when a mistake led a court to do what it never intended . . . ; when a mistaken belief of one party prevented proper notice of the action . . . ; or when the complaining party was disabled at the time the judgment was entered . . . . Relief has also been extended to cases involving negligence of a party's attorney in not properly filing an answer . . . . [¶] Relief is denied, however, if a party has been given notice of an action and has not been prevented from participating therein. He [or she] has had an opportunity to present his [or her] case to the court and to protect

12

himself [or herself] from mistake or from any fraud attempted by his [or her] adversary." (*Id*. at pp. 471-472, fn. and citations omitted.)

Here, although Shirley M. stated, in an unsworn letter written to the County and attached to her petition, there had been a misunderstanding in that she had "automatically assumed" A.L. would be funded until she graduated some time after turning 19 years of age, there was no mention of alleged extrinsic fraud or extrinsic mistake, or any suggestion the juvenile court should grant such equitable relief in this case. Shirley M. wrote in her unsworn letter that A.L. "can be quite agreeable" and often does not understand what is said to her, but there was no evidence A.L. was incompetent. Nor was there any evidence presented that the County fraudulently prevented A.L. (or Shirley M.) from participating in the proceedings, or engaged in inequitable conduct designed to intentionally or insidiously prevent A.L. from participating in the termination proceeding.

To the contrary, the evidence in the record consisted of the County's request for termination of dependency, which included a sworn statement from the social worker that both A.L. and Shirley M. intended to have A.L. continue living with Shirley M. as long as she remained in school or sought employment, and A.L. wished to have her dependency terminated. The request for termination of dependency also included a form, initialed and signed by A.L., stating A.L. did not wish to attend the termination hearing, despite being informed of the potential consequences thereof. A.L. was represented by counsel and, contrary to her assertions, there was no evidence she signed those documents without advice of counsel, or that she did not understand them. The request for termination of dependency was approved by A.L.'s counsel and the only suggestion A.L.'s counsel did so without first obtaining all the necessary facts is Shirley M.'s unsworn letter claiming counsel had since admitted that to her. A.L. was provided

written documentation of the date upon which her dependency was to be terminated and a copy of the order terminating dependency was served on both A.L. and her counsel.

There is a strong public policy in favor of the finality of judgments, and equitable relief based on extrinsic fraud or mistake may be given only in exceptional circumstances. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981-982; *Gibble*, *supra*, 67 Cal.App.4th at p. 315.) Obviously, at the very least, the party must put the court on notice that he or she is seeking such equitable relief, and present some evidence of extrinsic fraud or extrinsic mistake, justifying the relief. Neither occurred here.

### *Ineffective Assistance of Counsel*

Finally, A.L. argues her appointed counsel rendered ineffective representation in connection with the termination of her dependency. She contends counsel stipulated to terminating her dependency without investigating whether her needs were met and faults counsel for not insisting dependency be continued until the California Fostering Connections to Success Act went into effect.

This is not, however, an appeal from the order terminating dependency jurisdiction. That order was final several years ago. A.L. may not, in this appeal from the denial of Shirley M.'s subsequent petition, challenge the adequacy of her representation in the prior proceeding that resulted in the termination of dependency jurisdiction. She has forfeited her claim of ineffective assistance of counsel by failing to raise it in a timely appeal or writ petition after entry of the termination of dependency jurisdiction order. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150, 1156-1160; *In re Jesse W.* (2001) 93 Cal.App.4th 349, 355; see also *Garcia v. Superior Court* (1997) 14 Cal.4th 953.)

14

## DISPOSITION

The juvenile court's order is affirmed.

                                            _____HOCH_____, J.

We concur:

_____RAYE_____, P. J.

_____HULL_____, J.